Attorney-10-0057 Tom A. Spence, appellant by James McFedrinan v. GATX & Grape Customs Incorporation & Beliefs by Jill Jennings Dreswicky & Mark Sanselli Mr. McFedrinan Yes, Your Honor May it please the court, counsel, for the record, my name is Attorney James McFedrinan of the Clean Associates in Peru. Here at this time on behalf of the plaintiff, Todd Spence, and Mr. Spence, November 14th, 05, 41-year-old individuals coming down from a railroad car with a sample, fall, sustained substantial injuries. Mr. Spence testifies in reference to his deposition that running the tank clearance was what caused him to fall. Clearance was insufficient and he lost his foothold. The issues raised in connection with the summary judgment at the lower level is a question of federal preemption. Whether or not federal preemption would allow the defendants to escape potentially having to respond for their potential accountability at trial. And correspondingly with that, whether there's a question of fact is whether or not there's a violation of federal regulations. Trial court ruled against the plaintiff on both points. This court reviews those issues to no vote. The threshold question is whether there's automatic federal preemption. Indeed, when the defendants filed their initial arguments in this area, which is a complex area of the law where it doesn't appear that in many years Illinois public courts have specifically spoken to the issues. They initially were thrust centrally, filed a motion for summary judgment on the basis there's federal preemption, federal issues, can't bring anything in state court. And that was premised on 231.21 of the federal regulations, Federal Railroad Safety Act, and also cases such as Easterwood and the other cases. They raised conflict preemption. They dealt with that. They dealt with express preemption. They maintain clearly no common law or state court cause of action would lie. And that was the initial thrust. And then at that point, Cooper Stepp, one of the witnesses referred to him, one of them hadn't been taken. And we didn't have an expert. And they also didn't address the amendment to the savings clause to a 106B that Congress enacted in 2006, retroactive actions going back to 2002. We respectfully suggest that on the threshold question that there clearly is no total federal preemption of all state court causes of action. In Illinois, aside from what may exist in a lot of other states, there's also the 1979 Supreme Court case, the Rucker case that was discussed in that case. That case has never been overruled. In Rucker, GATX was the defendant. They maintained that, indeed, there was express preemption and that you could get in the evidence of federal rights not requiring, in that case, a head shield, and that not only should you get it into evidence, but it should be determined that there couldn't be any liability. Now, the Supreme Court in Rucker ruled against the plaintiff in suggesting you can get in the evidence, but against the defendant on the question of whether or not it's determinative as a matter of law, that if the federal regs don't require it, you're off the hook. So, that case has never been overruled in the state of Illinois. Now, we do have the later Village of Muddy Line case, 2008 case, also Supreme Court case, the state of Illinois. But that case didn't involve a tort case. It also didn't discuss Rucker. It didn't have to deal with a lot of the same issues. There was a block crossing issue. The village tried to pass an ordinance to stop people from stopping too long in their municipality. There's a ton of block crossing cases that say a federal block preempts in that area. They did in Village of Muddy Line reference 20106. They did reference 231.21, but they didn't rely totally on that. They also relied on these other cases that said block crossing cases, various preemption. They also didn't have to deal with the amendment to the Savings Clause because it wasn't a tort case. And the amendment to the Savings Clause specifically applies to tort cases only. Now, in the instant case, we still maintain that there's a bylaw here from plaintiff that there is no preemption in it, that an Illinois court is determined at all in cases of this nature based on Rucker. But this court doesn't need to rule and hold that way to rule for the plaintiff on the summary judgment motion because in minimum, the Savings Clause 20106B preserves causes of action that can be brought in state courts for alleged violations of federal regulations. In our amended complaint, alleged violation of federal regulations in reference to run-of-the-day clearance. Then the question becomes, and clearly, all these other cases that they recited, the Omelette case, the initial Lundeen case, they cited their brief, the Morell case. Morell couldn't help the plaintiff there on the speed issues because the plaintiff couldn't allege a violation of federal speed regulations because it wasn't going that fast. Certain other causes of action were preserved in Morell to proceed to state court. And the Morell court acknowledged that the Savings Clause amendment changes the analysis from how the other cases are done. How it came about was set forth in my brief. They had a horrible accident in 2002, Minnesota, anhydrous pneumonia, lots of people injured and hurt, and a lot of people were getting knocked out of the box on their causes of action on the basis, too bad. Can't do anything in the railroad on cases of this nature because there's federal preemption. Congress, 2006, passed a law that says, no, there isn't. We're clarifying the existing law. If you've got a violation of federal regulations, you can still pursue it. We've got allegations of a violation of federal regulations here in reference to run-of-the-day clearance, which the run-of-the-day minimum clearance, 231.21, the statute they place heavy reliance on, has to be minimum clearance of tread and ladder styles, 2 inches, preferably 2 1⁄2 inches. We say there's a question of fact as to whether it's 2 inches. Hooper, in his deposition, clearly, specifically states he took the measurements at the time. He says that it's his recollection that the measurement was less than 2 inches. Quoting, you have indicated that one of the rungs was noticeably different from other rail cars, and I take it from the rungs in that car. Is that correct? Answer, yes. And in connection, was the rung closer to the bottom? Yes. And then he goes on. It's a long answer, but towards the bottom he says, I recall that measurement being less than 2 inches. Next question. My understanding of your recollection of your actual measurement was that the distance was less than 2 inches. Answer, yes. He goes on with some other things, too. Another part. Is your best recollection under oath there was 1 7⁸ inches on your measurement? I recall it being less than 2, and that measurement, 1 7⁸, sticks in my head. That's enough, I suggest, for a question of fact. They point to other points in his deck where maybe he's not as clear, but even there, if you read him in proper context, he still says it's his opinion today, even when confronted with the unverified report, that we don't know if somebody else got into it and changed it or not. But even aside from that, he says it's still his opinion today that his measurement at the time was less than 2 inches. That's enough to get me to the jury. I respectfully suggest that my client have his day in court as to whether that regulation was violated. They rely upon the unverified report, and they suggest, well, Hooper didn't 100% say that that was inaccurate. I suggest reading it in the proper context he did, but regardless, they have the burden if they want to rely on that report to prove up the foundation. I've been suggesting in all my pleas that they, it's unverified, and he didn't prove up foundation. If you check that deposition in their questions, they don't touch it substantively. They're relying on parts of my questions. They didn't go after it because they knew, more likely than not, he wasn't helpful. They're good, resourceful lawyers. It isn't something they were staying away from if they thought it would help. He didn't prove up the foundation on that 2 1⁄2 inches. Then they also rely on an inspection that was done a couple years later, depending on if you listen to his 2 1⁄4 or 2 1⁄8. Well, that's 2 years later. That can't defeat Cooper, who did the measurements on the date of the accident. Just so I'm clear, you're talking about the foundation of the entire report? Yes. That they attached to the summary case? That's correct. Okay, and did you object to that foundation at the trial court? I objected that it was unverified. They could have it there, but I did raise the point that it was unverified and shouldn't be given credence. It's on page 4 of my trial court submission, and it was also argued by me that it was unverified. I didn't object to it being attached. It's a question of what can attach what you want, but what credence should be given to it. I did raise the fact that it was unverified there, as I am raising it here. And it isn't. And even if they could use it, it still doesn't defeat his testimony as to what his recollection was in creating a question of fact in the middle, even if they can use it. Then you've got conflicting evidence. That's what juries are for, not for decisions as a matter of law. I'm sorry, Justice Battaglia, you were going to ask me a question. Is it usual for reports like that, investigation reports, to be verified? I don't know that it's usual, Justice, but if you're going to try and you have to prove some kind of foundation. I'm not quarreling with the fact that he didn't verify it initially. I'm quarreling with the fact that the fact that it's unverified and not proved up with a proper foundation doesn't give it any credence before this court or the trial court. And what was lacking in the foundation? Somebody saying that it was accurate. You see, the guy who authored it said he didn't recall that that was correct, and he also said other people can get into it and change it, and there was even evidence that it had been changed in 2007. So it had been modified to some extent. We don't know if it hadn't been modified further. There was evidence testified to by Hooper and it's on the face of the report that it was last modified in 2007. And he said it's not secure. So we don't know that the report that they had at the end is the same report that Hooper typed in the beginning. And there is no foundation for it. But even if it is, even if it is, at most it creates a question of fact because the guy who took the measurements says it's less than two inches. That's something the jury should hear. If they say that they're going to believe what's in writing, notwithstanding the fact that you can get in there and change this and we can't prove for sure it's accurate, then I guess if the court allows that, that's fine. But it certainly doesn't mean that I can't testify that I don't think it was two inches. Wasn't there somebody from Grain Processing Corporation who contemporaneously said that the measurement that Mr. Hooper had taken complied with the federal standard? I don't know. Not to my knowledge. Not to my knowledge. I don't believe there was a deposition taken. There was a suggestion that someone, that he called somebody from Grain Processing and whatever he told them, they said it complied with the federal regulation. But he doesn't know what he told them, and that person has never been identified. There was no deposition of anybody taken, and that person certainly wasn't on the scene. Okay? So you've got all kinds of... At a minimum, you've got to... What if we didn't have a report? My guy would still be able to testify to the question of... Hooper would still be able to testify. That would be enough. You don't have to have a written report. That's a question of what do you believe. That's not for this stage of the proceeding. And then you get to the other points. I've argued that also that if it's 2 1⁄4 or 2 1⁄8, that, for my expert, and I think that he's testified pursuant to a reasonable degree of engineering certainty based on the foundation of not only Hooper but Spence, geometry, the photos, and that the prudent thing to comply would be 2 1⁄2 inches. And I suggest that's another argument. That even takes all of this other stuff out of it because even if it says minimum, we're in Illinois and the standard is what's a reasonably careful person do. And the expert says a reasonably careful person, I think common sense tells you, a reasonably careful person when the federal rate says 2 1⁄2 is preferred, a reasonably careful builder and designer does at least 2 1⁄2. So I suggest that that's an additional basis that even takes all of this other stuff out on this 2 1⁄4 and 2 1⁄8 business. I suggest for the reasons that I've indicated here and for the reasons indicated on all my briefs, I respectfully request that the court reverse the remand and allow my client's day in court to endeavor to prove that these defendants should be held accountable for the insufficient run to tank clearance that caused my client substantial injuries. Are there any questions? Thank you, Mr. McFadden. Ms. Julius-Wicky, did I mangle that too badly? That was perfect. I will be splitting my time with Mr. Sandstone who will be arguing on behalf of Cole-Pellant's grant process. Just briefly, plaintiff's counsel is correct. This case is about ladder clearance. We have a code of federal regulations, section 231.21, that specifically deals with ladders. It deals with the size, the width, the size of the rung, the length of the stiles, and the placement of the ladder. The placement of the ladder is particularly important in this case because that's the issue in this case. The federal regulation even deals with the clearance, the distance between the ladder and the body of the tanker. And that federal regulation says at a minimum it has to be two inches, preferably two and a half, but at a minimum, two. This is part of a statute or a regulation known as the Federal Railroad Safety Act. Congress enacted that to encompass and regulate railroad safety so that we had national uniformity. When we have a situation like that, it preempts state law that otherwise tries to enact similar laws. That's exactly what we have here. Isn't it confusing that the two-inch minimum, but preferably two and a half, so does preemption take place at two inches or two and a half? Preemption? In other words, is he out the door? Because it seems to me like they left a value judgment there between two and two and a half right in the statute. I've never seen a statute like this that says this is the minimum, but it'd sure be nice if you did two and a half. That's correct, Judge. It does say that. The problem with that argument, which was actually going to be my closing comment, is if you take that theory and you say, okay, well, it says minimum of two, but probably two and a half would have been better, so let's make the minimum two and a half. What you're doing is you're changing the federal regulation. I mean, we didn't draft the federal regulation. It was drafted with that language, and we have to accept it the way it is. If plaintiff, if we accept his argument that two and a half really should be the minimum and not the two, then what we're doing is we're changing not only Illinois law and national law, but possibly bringing to a screeching halt all railroad industry in this country and railroads that come from Canada and Mexico, because now everybody will have to comply with that 2.5 minimum standard. The regulation says two inches is the minimum. Anything below that, certainly they can allege a violation and get around the preemption through the savings clause. The problem with that here is that we don't have a measurement less than two inches. We have a measurement in excess of two inches at every phase in this case. But didn't Hooper say that his measurement, his recollection, is that it was one and seven-eighths? Well, he says that's what he recalls, and let me clarify a little bit of what Plaintiff's Counsel said on that issue. Mr. Hooper, in his deposition testimony, never came out and said that report is wrong. Mr. McFedrin makes an issue of being verified or unverified. I'm not sure what he means by that, but the report has been authenticated in a request to admit by Diageo, the employer, who doesn't have a dog in this fight. So that report is authentic and true and accurate according to Diageo. What Mr. Hooper said in his deposition was, you know what, I didn't look at any notes. I looked at this. I thought I remembered it being less than two, but I see the report says two and a half. I don't know if I typed that or not. And what's interesting here is that Mr. McFedrin specifically point blank asked Mr. Hooper, so is it your testimony here under oath that the reference within the incident report to the clearance being two and a half inches is incorrect and an error based on your measurements? Mr. Hooper responds, I don't know. So at best, Mr. Hooper says, I don't know what the measurement was. And an I don't know is not enough to overcome a motion for summary judgment where we have the incident report that says two and a half inches. We have an inspection that took place two years ago in October of 2008 where both plaintiff and his attorney were present. We measured all rungs on the ladder on both sides of the car, and not a single measurement was less than two inches. Nobody objected. The car went back into service. So plaintiff has to come forward with some kind of evidence to show that at the time of the accident, it was less than two inches. He hasn't done that. And what's more telling is that Mr. Hooper's testimony contradicts himself. He says, well, yeah, you know, I thought it was less than two inches, and he's not really sure what the measurement is, but what he is sure about is that he remembers talking to and communicating with someone from grain processing. And he sent them that measurement, whatever it was, and said, does this comply? The person at grain processing said, yes, it does. And significantly, Mr. Hooper then took no further action. So apparently even Mr. Hooper understood at that moment after the accident, immediately after the accident, that the rail car, the ladder attachment clearance, complied with federal regulations. Mr. McFederer makes an issue that, oh, it could have been tampered with. Well, let's talk about that for a minute. Mr. Hooper himself undermines that. When asked point blank, Mr. Hooper, do you have a reason to suspect that it was tampered with? He said no. More importantly, when Mr. Hooper was asked, do you know of any motivation that the IGO would have to tamper with the document? He said no. So, you know, Plaintiff, I understand Plaintiff is entitled to reasonable inferences in defining a motion for summary judgment. He's not entitled to paranoid speculation. There's no indication that this document was ever tampered with. And in addition, he still has to deal with the inspection that took place in 2008 that showed the car was still in compliance. So he also makes reference to the Rutgers case. I just want to address that briefly. Plaintiff says to put all his basket in the Rutgers case. The Rutgers case, contrary to Plaintiff's assertion, does not deal expressly with preemption. That's not really the crux of the case. The case, you know, it wasn't as though GATX brought that up as an issue. It was sort of a side note. It was sort of an offhand comment. What's more important that, you know, in 2008 the Illinois Supreme Court, who we have to assume is aware of the Rutgers case, decided exactly the opposite, that there is federal preemption. So for Plaintiff to rely on Rutgers I think is misplaced. Finally, I just want to address quickly that Mr. McFadren's expert, Mr. Roberts. Mr. Roberts did not inspect the car. He did not take any measurements of the car. What he did was he relied on Mr. Hooper's testimony that he thinks he remembers it was less than two inches. He looked at some photographs that were not drawn to scale. And when asked about his basis for reaching his conclusion that the measurement was less than two inches, he couldn't articulate a reason. He relied on geometric principles. When asked about the geometric principles, he couldn't tell you what it was. There's no way to duplicate how Mr. Roberts reached his decision that it was less than two inches. It's just absurd and it shouldn't be admissible and it shouldn't be considered. Bottom line is if Plaintiff proceeds, he's already indicated that he doesn't think the two inches is enough. He thinks the minimum should be two and a half inches. And again, what he's going to end up doing is changing the entire railroad industry throughout this country and throughout Canada and Mexico because nobody's going to be able to go through Illinois without complying with Mr. Spence's more stringent standard. So for all of these reasons and for the reasons cited in our briefs, we request that the trial court's granting of our motion for summary judgment be upheld. Thank you. Are there any other questions? Thank you. Mr. Sansone? Good morning. You have seven minutes. Thank you. May it please the Court, Mark Sansone on behalf of Green Process Incorporation. I just want to state that I do agree with the arguments that were made by co-counsel. I just want to touch on a couple of other things. One of the issues that Mr. McFedrin brought up on appeal for, and mostly in his reply brief, is this issue about the foundation for the report involved here. Although he did state at argument on the motion for summary judgment that this is a report that is unverified, I'm assuming he means not sworn under oath, he never made a foundation argument in the trial court level, and therefore I believe that's waived here. Furthermore, if that was an issue in the case, there was evidence. It's not in the record on appeal in front of you. There was a deposition by Tim Murray, who is a supervisor at Diageo, who received and approved the report and indicated in his deposition in 2007 that that is why the report then says it was finalized at that time. Mr. Hooper does state that he's the one who took the report, he filled out all of the information in there, and the one thing that just doesn't, he doesn't recall is the measurement of 2.5, that he thought it was something less than that. But I think it's important to note that the two things that Mr. Hooper was clear about, number one was the fact that he got the measurement the day after the occurrence or the day of the occurrence and immediately sent it to Grain Processing Corporation for verification as to whether or not that measurement was within standards, and he received confirmation that it was. Two, the only other thing that he states in his deposition that he is sure of is that this ladder rung had less space, less toe clearance than the other rungs that he was climbing. But he indicated whether that means it was one and seven-eighths or two and a half inches, that's still not a lot of space, so I don't know if that was enough room for toe clearance. So Mr. Hooper just knows that this one had some less spacing than the other ladder rungs, but he doesn't know for sure what the measurement was, and he never says that his report is inaccurate. Was there an introduction of what the design parameters are? Because you've kind of used the term interchangeably with saying standards and what the statute says. The statute says two, preferably two and a half, because Mr. Hooper testified that when he got back that the measurement was within the design parameters. He does not say in his testimony that it was within statute or it was in regulation. So are you saying that those are the same thing? I am, Your Honor, and I believe the report itself says within FRSA standards. I don't have the report right in front of me, but I'm pretty sure that's what it says. When he was questioned about it in the deposition, I think the phrasing got a little mixed up there. Well, but there seems to be a dispute whether or not he is the author in toto of the report. He is. Well, he testified that he doesn't recall putting that measurement in there or that other people could have changed that. He saw other names involved in that report. So I don't think we can say with certainty that he says that he completely authored and verified everything in it is true. He testified that he could not recall if that's what he typed in or not or if he typed something else in there or not. He says that a few different times in his deposition. The other individual who was mentioned in his dep is this Mr. Murray, who I've already referred to, who was his supervisor, and it was his responsibility to review and make the report final. And John Longo's name is also in his deposition. He states that that's another name. Right. We took that individual's deposition as well. He had very little, if any, input in this. But Mr. Hooper testified that all of the typing aspects of it, he's the one who put those inputs in. It was just this measurement that four years later, with nothing to refresh his memory other than this report, he said, well, I thought it might be less than that, but I'm looking at this report. I can't say if that's what I put or not. But I guess what I'm asking is where is it in this testimony that they say that design parameters are the same as the statutory standard? Is that in here? I mean, did you clarify that in the testimony? In the deposition? I'm not sure if it is. I know that, like I said, the report does say 2.5, which is in compliance with the federal standards. And he indicated in his deposition that that was information he received from green processing. That's why I answered your question. Your question that this was, I think the language got mixed up there, but his testimony was consistent that he received, you know, we asked him, where did you get that information? He said, well, when I got the measurement, I sent it to green processing, and they told me that it was in compliance. He didn't look up the standards himself, the federal regulations, to see if it was. He took that information from an individual that he spoke to at green processing. The law in this case goes back as far as 1917 with the U.S. Supreme Court case of Illinois Central Railroad v. Williams that the Railroad Safety Appliance Act is designed to have standard size and uniformity and character with ladders and handholds attached to railway cars. In Gilvory, the U.S. Supreme Court said that the Railroad Safety Appliance Act regulates all such equipment on rail cars and excludes any state regulation which would be consistent, complementary, or additional to these standards. And I know Mr. McFedrin has made an issue out of the Village of Mundelein case not being a tort case. However, in that matter, the Illinois Supreme Court in 2008 looked to the Easterwood case and went through an entire analysis of federal preemption law under Easterwood, which was a negligence case. In that case, the plaintiff was alleging that the conductor was going too fast for conditions and had a common law negligence case. And the United States Supreme Court stated that the negligence claim was preempted by the federal regulations under the FRSA. Once again, the evidence here has been that this particular ladder met the minimum federal standards under the regulations of being two inches at a minimum. There's been no proof by plaintiff other than a speculative, unsubstantiated, questionable memory of Mr. Cooper as to anything that this clearance space was under two inches. Furthermore, plaintiff agreed in the response brief to our motion for summary judgment that when we all went out and measured this train car, it met two inches at every measurement throughout the ladders. There are two different ladders attached, if you can picture the train car. We actually measured all sides, all ladder rungs. So the fact that one might be two and a quarter and one might be two and a half, Mr. Spence couldn't state which side he fell from, and that's why we examined it all. So the evidence suggests that this train car was in compliance, and it's plaintiff's duty and burden to show that there was some violation in order to maintain his cause of action in state court. And for those reasons, we ask the court to affirm the judgment of the summary judgment. Any other questions? Thank you, Mr. Sonsoni. Thank you. Mr. McFarland. Thank you, Your Honor. Please support and counsel once again. Going back towards the beginning of the argument and Justice Schmitt's question in reference to the federal statute and the suggestion, I also respectfully suggest that where it says minimum, is it next to either two inches or two and a half? It says minimum clearance at the train ladders and stiles, and that's two inches, preferably two and a half. And when you're dealing with a reasonable person's standard in Illinois, I think the preference is the appropriate one to comply with a reasonable manufacturing designer standard. This business about we're going to have to redesign all that, I don't believe that. This run was less than all the rest of them. Everybody said that in connection with their testimony. This isn't going to affect interstate commerce at all to make them comply with two and a half. But aside from that, there's a question of fact as to whether it's two inches. Is there any place in the record where your client's witness says, I know that report's wrong, I know it was less than two inches? And that report is just incorrect. He doesn't say anywhere where he knows it's wrong, but he says somewhere where he knows that his recollection is that his measurement was less than two and a half inches. It was less than two. And, hey, look at the thing, too. They're talking about the later one. The later one didn't measure out two and a half either. The one they're relying on two years later. So, I think there's no question that the first one's wrong. If they're so proud of the one two years later, then how come it didn't measure out two and a half? Because the first, when they go back to the point, aside from the report, why can't my man testify as to his recollection that he, and I think if you read in proper context, he does say it. Because it isn't just I don't know whether it's right or wrong. You've got to read the whole thing on these answers. And when I probed him further, I asked him, is your best recollection on the road that it was one and seven-eight on your measurement? I recall it being less than two in the measurement, one and seven-eight sticks out in my head. But what about when all parties go out and measure the car on both sides, measure all that, and there's nothing that is less than two inches? We don't know for certain whether the measurement at that time was from the inside part of the round or the outside. That's not stated anywhere. I wasn't personally there. That could make a difference. We also don't know whether something happened to the ladder in the meantime. It's two years later. We don't know that something didn't happen to it in the meantime. And again, we're trying to decide whose testimony should be believed. I come back to the point, let the jury decide that. Why doesn't Hooper get to say, I think it was two and a half on the measurement on the day of the accident. And let a jury decide whether they believe that or any of this other stuff. If we were the plaintiff, we'd have to show that nothing happened, that it didn't change afterwards. If I was trying to show, how do they get to say that nothing for sure happened in the meantime? But aside from that, those are getting into deciding the facts. My whole point on this is I got a witness who says he measured it on, and he's the only one to measure on the day of the accident. Murray never measured it. And he says, in reference to his question, it isn't just I don't know. When he gets into some of these things, that's when he goes into the fact. You know, other people can get into this. It's not secure. He even says his opinion today, after looking at the report, is that it was less than two inches. That's on page 28. It's the rest of the story, as Paul Harvey says, when they get past that section that they want to rely upon. In your opinion here today, is that you recall it being less? Yes. His opinion is that the measurement he took at the time, which is the only guy that measured it at the time, is less than two inches. Well, is this really opinion testimony to begin with? Isn't he talking about a fact that was the fact is I measured it under two inches, or the fact is I mentioned it over? Are we even talking about opinion testimony here? Only in the context of whether the position changes, given that there is no report. Is your opinion what's right, less than two inches or two and a half? And if he then, then it's two and a half, or I mean it's less than two inches. That's what he says. But he also says his recollection is it was less than two. Again, I go back to the point, I don't suggest you should need any more than that. This is, you're not acting as a jury at this level, as you know. My point is I want to have the jury decide this. Let them decide whether looking at Cooper they believe in his credibility. Him standing up and saying, no, I don't. Yeah, I see that report. I don't care what it says. My recollection is it was less than two inches, and I'm sticking to it. And he never backed off through his whole gap. They can try and argue all these other things they want, but he didn't back off of it. Certainly taking inferences and likeness. I think the question they were asking about was, and I think this is your question, so is it your testimony here under oath that the reference within the incident report to the clearance being two and a half inches is incorrect and in error based on your measurement? Answer, I do not recall specifically. This Diego, and I'll read the whole answer so it will be fair to you, this Diego Incident Investigation Tool is open to others. It is not password protected. It states on one of the pages that it was updated November 2007 by Tim Murray. I do not recall if I typed that two and a half inch value or not. This was an integral part of this investigation. But the question was, based on what you know, is that wrong? You forgot the rest of the story. There's another part that's left out. It says when I got this report and studied it, I do recall it being less than two inches. In other words, when they got it, when he got it, he still believed it was less than two inches. So he thought it was wrong. And taking inferences and likeness favorable to my client, and that's why I probed it further because I didn't want these issues. Is it your best recollection under oath that it was one and seven-eight in your measurement? I recall it being less than two. In that measurement, one is seven-eight-six in my head. That's a question of fact. Taking inferences and likeness favorable to my client, certainly. Mr. McFedrin, what's the purpose of those reports? Is there a follow-up that's done if there's a violation of some sort? I don't know that that's been fully explored. We didn't get to do a lot of discovery here. They came with this summary judgment motion out of the blue on federal preemption. Frankly, when they filed it, if you checked the record, it was all based on the question of law and absolute preemption. It wasn't even anything on the facts hardly in it. They attached a copy of the report, but it wasn't a strange part of the record. We never got all the discovery done on all these other witnesses to probe a lot of these other things, Justice. Okay, but he had Mr. Murray, was it, saying that he got the report? He got the report, but he also said he didn't have anything to do with preparing it. He couldn't vouch for really what's in it because he didn't prepare it, and he also admitted that it's not that big. He went in and changed something. I don't remember what he changed, but he admitted changing something. Okay, but my question is, does somebody, if there's a finding, a report, that the latter clearances were not compliant with federal standards, does somebody do something about that? I don't know that. I don't know that that question was asked, and also this business about Hooper and further response to that, and the question who he talked to, he doesn't know what question he asked him or what measurement he told him. And also saying, I don't remember if I typed it or not, doesn't mean it isn't typed as a typo. It doesn't still mean the measurement is accurate, but I still come back to, again, I think there's enough here that I should have my client, not I, it's not about the lawyers. It's not about resourceful counseling either side. It's about giving my client a day in court to prove that the reason that he was substantially injured in this case is because their wrong to pay and clearance in this particular wrong was inadequate and caused him substantial injuries because he couldn't get a foot hold. Any other questions? Okay. Thank you. Thank you. We'd like to thank all three of you for your arguments this morning, this afternoon. We'll take the matter under advisement.